18-3227. Yes, the appellants customarily sit on the left. Appellant practice 101A. We're ready to hear your counsel. Thank you. Good morning to you. Good morning. May it please the court. My name is Mark Jarmy and I appear on behalf of the appellant, Richard James. The court may have noticed that in the back of the courtroom we have a non-lawyer. I have 22 grandchildren. My grandson, Alex, has both the intellect and the ability to argue anything to anyone about everything. Does he have a lot of authorities to refer to? Give him a practice tip for when he gets up to work. He thinks he might. So he's here joining me here today. This case involves two related issues related to the sentencing of Mr. James. It is clear that Mr. James engaged in criminal conduct when he stabbed Officer Wilson. There is no dispute about that. He pled guilty and should have. The problem was that his sentence was improperly imposed. First, by giving him a six level enhancement, and then second, there was a, I'll use bronco phrases, piling on penalty, where he was sentenced to an additional 45 months in excess of the guidelines. I'd like to address both of those in turn, if I may. The first of them relates to the enhancement. Now, the defendant agreed that Mr. Wilson suffered serious bodily injury as a result of the attack. And serious bodily injury is, of course, extreme physical pain, protracted impairment of a function of a body part, or requiring some medical intervention such as surgery. That clearly happened here. That's what happened. He suffered several injuries. He had a dislocation to his jaw. He had an enhancement of a knee injury. And he had some stab wounds, none of which were particularly serious, nor did they leave significant scarring. That's what happened. He had a level five enhancement. This was not a case where the United States argued, oh, he was entitled to a seven level enhancement for a permanent or life-threatening injury. That's just not what happened here. There was nothing about his injuries that was life-threatening. They could have been if he'd been stabbed in a different place, I suppose. Or if he'd had a heart attack. Sure. I don't share the raw fear. If that had happened, sure. Well, is it necessary that he die? No, that the injury needs to be something that could actually threaten his life. Or be a permanent injury. Certainly. In this case, though, the injuries are not permanent, at least according to the findings of the district court. But what I didn't understand is, and help me unpack the facts, isn't it true that he will require knee replacement? Sure, as a result of? Why is it that if you have a knee injury that will require a replacement, isn't that a permanent injury by definition? No, Your Honor, with respect, I don't believe that it is. Why not? First, this was like many of us. He had a meniscal tear probably in advance of this injury. This exacerbated things. And he can get a knee replacement surgery. But he didn't need knee replacement surgery before this attack by Mr. James. That's true. Okay, so after the attack, he needs knee replacement surgery. I don't understand why that's not a permanent injury. Because it can be fixed with a relatively routine procedure. Well, it can be fixed with a foreign device. It's not my own knee. It's somebody else's. It's a piece of metal or a piece of plastic. The court makes an interesting point. And I guess what I would suggest to you is that the government didn't carry its burden in showing that the injury was not a result of a preexisting condition, but actually what happened as a result of this. The medical records that were introduced do suggest that Mr. James was, pardon me, that Officer Wilson had a meniscal tear or at least some difficulties, and this just exacerbated things. All right. Now, from your brief, he had, I think, 18 sutures? 14 sutures. Yes, Your Honor. Some people might argue about that, but those scars are going to be permanent, aren't they? They could be, though it was apparent to the court that there was not any obvious disfigurement. The court made that finding in its sentencing. And the government conceded that these were scars that could have been taken care of by plastic surgery. All right. Now, let me ask you this. Your argument assumes the kind of big-picture argument that the guidelines are mandatory. I don't think so, no. They're not mandatory, are they? They're not. They're totally discretionary. That's right. And so the district court here is stepping up. I think you're arguing about one upward guideline range, right? Yes, Your Honor. That's it? Yes. And you're saying the court did not have discretion to move upward even that one bump? Oh, I'm not arguing that the court doesn't have discretion to do that. It's just going to have to make a reasoned decision. What the court found is this. Well, the court might have said, as Judge Murphy suggests, that having somebody have to have an artificial knee, it may be not too bad, or as you try to characterize it, but in fact, it's permanent. Permanent doesn't mean that you've got to be in a wheelchair. Permanent just means that it cannot be corrected. And this would have criteria? That means an artificial knee cannot be corrected. It's there for life. And what portion of whether you would have had to have had an artificial knee as a result of the previous? I'm sorry. The microphone is a bit direction sensitive, so if you'll move it. Yeah, there you go. Let's try it a little. I apologize, Judge O'Shaughnessy. No, that's all right. It's not your fault. We suffer with it all the time. I think that certainly there was a pre-existing injury that he had that's exacerbated things, and now he certainly has a, he had something that required an additional surgery. What the government didn't prove, nor did the court find, is what would this have happened anyway? There was no medical testimony that would have suggested that he wouldn't have had to have an artificial knee at some point anyway. So I would suggest to the court that this is not so much a question of discretion, but a question of process where the court needs to make better findings than it did. What it appears to me happened is that the defense is arguing for a five-level enhancement and the prosecutor is arguing for a seven-level enhancement, and the court said six sounds like about right to me, and played solmonically a role rather than one that is consistent with his duties to make the appropriate findings. Are you saying when a judge acts like Solomon that judge has abused her discretion? No, Your Honor. What I am suggesting is that if he's going to act like Solomon, he needs to explain his decision in a more reasoned way. I think you see that again when you turn to the question of the departure, where the guideline range is 108 to 135. I note that 120 months or 10 years is about in the middle of that. The government asked for 240 months and the judge said, no, I'm going to split the difference again and come to 180, and that was the sentence that was imposed. There again, not with much analysis, not with much of an ability for us to understand why the court did what it did. If you look at the 3553 factors, and you'll find things like the seriousness of the offense or the need for just punishment or deterrence or protection of the public, these are already things that are incorporated within the various things that he received enhancements for. He had a base of 14, he got an enhancement for a dangerous weapon, for a 111 conviction because of the particular victim, was a prison official, he got a 6-level enhancement. The court just didn't do enough explaining to know this court as a reviewing court, looking at it de novo, why did he make these decisions? We don't know that, and because the court didn't provide that level of analysis and explanation to this court, I think resentencing is appropriate with directions to first institute a 5-level rather than 6-level departure because his injuries were precisely consistent with serious bodily injury. They're not anything greater than what is contained within the sentencing guidelines. Related to your argument that the problem here is inadequate explanation, you still have to show that there is some harm. Isn't the utterances of the district judge sufficient at least to establish that if we send it back for further explanation, isn't it pretty clear that the same result would abide again? I don't think so. Okay. If I could, I'd explain to you why. Oh, absolutely. I think that with respect to the enhancement for giving him an extra four and a half years, that was utterly unexplained. So it makes a real difference because the court never told Mr. James, look, what you have here is conduct that is consistent with the guideline ranges, but here's why I need to do more than that. That explanation was never given. But more importantly, on the movement from a 5 to a 6, that is utterly unexplained. He said he's splitting the difference, and it's allowed. It is allowed, but he needs to do more. But he did say he was splitting the difference, didn't he? I don't recall those words. That's what he did. That is effectively what he did. Well, I guess your point is if somebody is going to act like Solomon, then that person needs to explain why splitting the difference is the appropriate way to proceed.  May I reserve the remainder of my time? Yes, you may. May it please the Court, Carrie Capwell for the United States. Good morning. Good morning. I guess if Solomon said I'm going to split the baby, he had to explain why he had to split the baby. The district court here did explain its rationale both as to the six-level enhancement, which was well-supported, and also as to the above guideline sentence. So the court here, its decision was not arbitrary and capricious. There was no abuse of discretion. Looking at the record, the district court's decisions were very well-supported. So as to the first issue, the six-level enhancement for injuries that fell between serious bodily injury and life-threatening or permanent injury, the court made a very good record after hearing testimony, including from the victim, of the injuries. And the district court considered the totality of the injuries. The focus wasn't only on scarring or only on the knee, only on the damage to the dislocated jaw. But the district court made clear that he was aware that this victim had made repeated trips to the emergency room to deal with infections to the scarring that had to be drained numerous times, and the victim had to be put on a course of antibiotics more than once. The victim actually did have to have some plastic surgery to help correct one of the scars that had initially been sutured near the ear on the left side. And there was testimony from the victim that that was a very large scar. In addition, the district court noted, and the district court had the opportunity to observe the victim, that the victim still had scarring at the time of sentencing, which is very important. Sentencing was 16 months after the brutal attack here. And there is case law from the Seventh Circuit, which is persuasive, which discusses looking at the injuries at the time of sentencing and what the condition of the victim is at that point, rather than trying to predict what the future will look like. And here, the district court observed that this victim still had scarring on his face and on his head, which continued to cause the victim discomfort. In addition, the torn meniscus that the victim suffered during the fall down the staircase when he and the prisoner were struggling and while the victim was still being stabbed, the victim testified that he still experienced pain in his knee, constant pain in his knee. He had had arthroscopic surgery after the attack to help correct the torn meniscus. He wore a brace regularly, practically every day because of the knee injury. Previously, he had been able to run six to seven miles every day. And after the attack and even after the arthroscopic surgery, he could no longer run and he testified he couldn't even jog. So had the district court imposed a seven-level enhancement for a substantial impairment, which is likely to be permanent, the government's position is that would have been well-supported as well. But the six-level enhancement here for injuries that fall between serious bodily injury and the permanent or life-threatening certainly is very well-supported by this record. But as I understand it, Ms. Capwell, you did not take the position that the need for knee replacement surgery as a result of this attack by Mr. James was a permanent injury. You did not take that position. Is that correct? Well, Your Honor, I know before the district court, the government took the position that the seven-level enhancement that the probation office had recommended was correct. I understand, but I'm talking about specifically as to the knee injury. Whether we would argue that that's permanent. I thought you did not. It was not argued that it was permanent in the district court. In the district court. Your Honor, I can't remember specifically and I don't want to say something that's wrong here. I think it would be supported that it would be a permanent injury. Well, if they did present it and the district court made no findings that it was permanent, then at least for this record, we have to take it that that was not a permanent injury, at least in the eyes of the fact finder. Right. What the district court found as to the jaw and knee injuries was that they were not substantial. So that is a finding that the district court made in the record, that they were not substantial based on the evidence that was presented. You say jaw and knee? Jaw and knee, the district court found not substantial. And so that was part of the reasoning that the district court did not impose the seven-level enhancement. Judge McGeough said that somebody who's been running six miles a day and now has had a torn meniscus and is not able to run at all, and that's not substantial? That is correct, Your Honor. But he did find that the injuries taken in totality were sufficient to support the six-level enhancement, which was more than serious bodily injury, but he just didn't feel that the government had met its burden to prove by a preponderance that the seven-level enhancement was justified. Now, a different judge may have found otherwise, and I submit enough facts here that the seven-level enhancement could have been applied. But here, certainly the plus six is supported by the record. It was well explained by the district court. And here, the defendant concedes that the five-level enhancement, there's no dispute that that would apply. And that, in fact, could have applied looking only at the scarring injuries and the stab wounds. That would have been sufficient alone to satisfy the five-level enhancement because that involved extreme physical pain and it required medical intervention. Here, the record is replete with further, more extensive injuries that do justify the six-level enhancement. Excuse me. And I'd like to turn to, if I may, Lester. Before you turn, I just want to say that it just seems to me that that kind of remark, this is not substantial. I'd like to hear him support that and defend that to a bunch of runners whose life is enhanced by or compelled or what other level of compulsion gets a runner to get up at five in the morning to run in 10-degree weather for four or five miles and tell them it's not substantial. And, Your Honor, perhaps the issue here may have been, as the district court did remark at one point, that without further medical records or testimony from a medical professional suggesting that the injuries were life-threatening, that the court just didn't feel comfortable imposing the seven-level enhancement. So it may have been that the district court just wanted additional testimony or records from a medical professional. That may have been the issue there. And the district court turning down now to issue number two, the above-guideline sentence of 180 months. The court carefully considered the record, addressed the 3553A factors, given all of the facts and circumstances in this case. The record makes clear that the district court was well-versed in the facts of the case. The district court considered a number of factors and not placed any undue weight on any one factor alone. The court noted a couple of times that the 180-month sentence was sufficient but not greater than necessary to meet all the requirements of 3553A. And more specifically, it considered several facts. It noted that this was a calculated attack by the defendant, that the victim could have died. The attack ended because there was intervention by other staff at the prison, not because the defendant just decided to stop the attack. The scissors that the defendant used to attack the victims were capable of inflicting lethal injuries, as the district court noted. The district court also considered the defendant's motivation in the attack, which was to basically get a change of scenery and to get out of the Leavenworth facility. District court noted that the defendant showed no remorse at all. The victim here was merely doing his job. The crime had had a severe impact on the victim. And the court also noted that the pattern of violence in the defendant's life, specifically having to do with the use of knives, both before this attack and then also being involved in an altercation at a different pretrial facility involving a knife, also led the court to believe that the public needed to be protected and that the sentence had to afford adequate deterrence. And so that 180-month sentence did reflect the various concerns in 3553A. Unless the court has any other questions, I will ask this court to affirm the district court's sentence here. Thank you for seeing the five minutes of your time. We appreciate it. Thank you. Counsel, I think you have one and a half minutes roughly. I will endeavor to be brief. The court made some important findings. First, these are not legally substantial injuries, and there was not obvious disfigurement. Consequently, its decision to say this was something more than serious bodily injury is not supported in the record. There is no evidence that says this is anything more than a level five enhancement. I want to talk briefly about the Webster case. An injury is not permanent unless there is a uniquely complex or experimental treatment that is required. A knee replacement, I would suggest, is not uniquely complex. Oh, come on, Counsel. You can't ask us to buy that argument. I'm sorry. I mean, you're just asking up to the impossible. I'm asking the court not to do what I'm... Permanent injuries are defined in all different contexts. They're defined in workers' compensation context. They're defined in disability context. See, we're not in a vacuum, and you're asking us to declare that the facts of this case are not permanent or substantial. I just don't buy it. I'm sorry. Maybe I'm in the past, so you best probably argue your case to them. I appreciate the court's concern. What I would suggest to you is it's not your call to have to make that decision as to whether this is serious or permanent. That is something that the district court should have done and did not do. Okay. Thank you, Counsel. Your time has expired.